The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. Upon reconsideration of the evidence, the undersigned reach different facts and conclusions than those reached by the Deputy Commissioner. Accordingly, the March 5, 1996 Opinion and Award of Deputy Commissioner Bost is HEREBY REVERSED AND VACATED. Neither party here has requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. At all times relevant to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed at all times relevant to this claim.
3. Constitution State Service Company is the compensation carrier or self-adjusting agency on the risk.
4. The parties further stipulated to the documents identified and submitted to the Deputy Commissioner at the initial hearing.
* * * * * * * * * * *
Based upon the competent and convincing evidence adduced at the initial hearing, the undersigned make the following additional
FINDINGS OF FACT
1. At the time of the initial hearing, plaintiff was 41 years old. Plaintiff was a high school graduate who began working at Sara Lee Hosiery in August, 1983. Plaintiff began her employment with Sara Lee at the Safie plant in "returns/tear downs." In the "returns" job plaintiff was required to hold a tray in her left hand and sort hose with her right hand. This was not a production job. However, plaintiff characterized the job as being repetitive because of the motions required of her left and right hands during the job. In particular, she held up her left hand almost all day while working with her right hand to constantly pick up L'Egg (Sara Lee) eggs all day. Plaintiff performed this job from approximately August 1983 through August 1988.
2. In the job of "tear downs" plaintiff would remove pantyhose from the Egg carton, inspect the hose by straightening them out with her hands and arms, and place the hose into a cardboard box. This was not a production job. Plaintiff performed this job through approximately March, 1992.
3. In approximately March, 1992, plaintiff became an "active materials handler." In that job, plaintiff would sort and place boxes of product onto a pallet. The heaviest of the boxes lifted by plaintiff was 22 pounds. Plaintiff would then move the pallet by use of a manual hand jack. Plaintiff would elevate the pallet on the jack by means of pumping the handle until she was able to pull the hand jack. Plaintiff would then pull the pallets on the hand jack to various locations in the plant and then unload the boxes from the pallet. This job continued throughout the work day. Plaintiff's job would also require her to run a hand scanner over the boxes on the pallet for inventory purposes.
4. Plaintiff recalled that she developed soreness in one of her hands or arms in 1986. While still employed with the defendant-employer, the soreness and pain and numbness stretched from below each elbow to the wrist, and essentially affected her forearms. In 1986, plaintiff received treatment from Dr. Warren Burrows. Eventually, Dr. Fred McQueen removed plaintiff from work on or about August 23, 1993. Plaintiff also received treatment and/or evaluation from Dr. George Ferre, Dr. Ronald Demas, Dr. S. J. Oweida and Dr. Stephen Naso. All of these physicians diagnosed tendinitis and/or carpal tunnel related symptoms and recommended that plaintiff leave the type of work she was performing as well. Plaintiff reported her new and/or increased complaints and symptoms to her supervisor in August, 1993. At the time of the initial hearing, plaintiff felt that one arm was no better than the other. She expressed pain and soreness in the elbows, hands, and fingers. She has no prior workers' compensation claims, nor has she had any since the filing of the claim in this case.
6. Before development of or significant aggravation of her occupational disease, plaintiff was capable of working at her job full-time, and, while not on production, was encouraged to work as quickly as she could in all positions. She no longer works with defendant employer due to recommendations by her family doctor and general recommendations of several of the workers' compensation physicians.
7. The undersigned find, as is more specifically described below, that the plaintiff has sufficiently and convincingly presented competent and credible expert medical evidence that plaintiff's job duties at Sara Lee were a significant contributing factor to plaintiff's upper extremity condition, and that plaintiff's job placed her at an increased risk of developing the conditions with which she was diagnosed.
8. Dr. McQueen, Dr. Ferre, and Dr. Demas were all presented with sufficient factual information concerning plaintiff's job duties to render competent, convincing, and credible opinions with respect to causation and increased risk.
9. The parties took the depositions of Drs. McQueen, Ferre, Demas, Oweida, Burrows, and Naso. In varying degrees, a majority of these medical experts opined that the plaintiff had developed either carpal tunnel syndrome, tendonitis, or some similar repetitive motion disorder of her upper extremities.
A majority of these medical experts indicated that plaintiff's jobs at Sara Lee placed her at an increased risk of developing the problems complained of in this manner. A majority of the doctors also indicated, in varying degrees, that plaintiff's jobs with Sara Lee either had a significant role in her complaints or significantly aggravated a pre-existing condition such that she was impaired.
10. Each of the medical experts gave permanent partial disability ratings for plaintiff's upper extremities. Some indicated that plaintiff had a ten percent rating bilaterally while others indicated a five percent rating.
* * * * * * * * * *
The foregoing stipulations and findings of fact engender the following
CONCLUSIONS OF LAW
1. Plaintiff suffers from a compensable occupational disease to her hands. Her testimony is credible and convincing as to the repetitive use of her arms, hands and wrists and as to her prior several years of work with defendant-employer, in three different jobs, without any impairment to her wage-earning capacity. G.S.97-53(13). Plaintiff's rapid, repetitive motion tasks caused her injuries. She was placed at a greater or increased risk for developing tendonitis of the upper extremities and/or similar repetitive motion disorders, including carpal tunnel syndrome, than members of the general population who do not work in jobs such as hers.Booker v. Duke Medical Center, 297 N.C. 458, 265 S.E.2d 189
(1979). Further, based upon the competent and credible medical expert testimony, as well as other evidence in the record, plaintiff's employment with the defendant-employer significantly contributed to, significantly aggravated, or otherwise significantly caused plaintiff's tendonitis and upper extremity problems. Id.
2. Thus, plaintiff suffers from a compensable occupational disease. G.S. 97-53(13). She is accordingly entitled to compensation under the Workers' Compensation Act. As a result of her compensable occupational disease, plaintiff was rendered incapable of returning to her former employment. Plaintiff's counsel is entitled to a reasonable attorney fee to come from amounts due plaintiff.
3. Plaintiff is further entitled to all medical treatment as may be reasonably necessary to effect a cure, give relief, or lessen plaintiff's period of disability. G.S. 97-25.
* * * * * * * * * *
The foregoing stipulations, findings, of fact, and conclusions of law engender the following
AWARD
1. Defendants shall pay such total or partial disability benefits which have accrued since the onset of plaintiff's occupational disease. These payments shall be based upon plaintiff's applicable average weekly wage which shall be determined by stipulation of the parties or, in the alternative, immediate submission of the issue to the Commission for determination. G.S. 97-29 or G.S. 97-30.
2. Plaintiff shall receive total disability benefits, on account of her on-going disability, for necessary weeks, if she has been unable to return to any work or, plaintiff may in the alternative, elect permanent partial disability benefits from the date she was rated by the physicians. G.S. 97-29; 97-30; 97-31. Whichever of these remedies as plaintiff elects shall be in addition to the amount of temporary total disability benefits that have accrued, if any, from the onset of plaintiff's illness until the provision of plaintiff's impairment rating. Should the parties be unable to agree on amounts due, plaintiff should notify the Commission immediately so that any remaining disability issue relating to election of benefits or percentage of permanent partial disability may be settled in as summary a manner as is possible.
3. The defendants shall provide for all medical-related expenses that have been incurred or will be incurred by plaintiff for the necessary and reasonable medical treatment tending to effect a cure of, provided needed relief and/or lessen the period of disability associated with the plaintiff's injury when bills for the same have been submitted to and approved by the Industrial Commission. Defendants shall also pay the appropriate travel mileage.
4. Plaintiff's counsel shall receive a reasonable fee for services in the amount of one-fourth of all accrued compensation due plaintiff, and if payments are ongoing, shall be entitled to have every fourth check paid directly to him.
5. Defendants shall pay the costs.
This case is HEREBY REMOVED from the Full Commission hearing docket.
This the __________ day of ___________________, 1997.
 S/ ____________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ ___________________ J. RANDOLPH WARD COMMISSIONER
S/ ___________________ BERNADINE S. BALLANCE COMMISSIONER
JHB/nwm 01/13/97